STATE of Iowa, Appellee,

v.

Timothy Lee SHULTZ, Appellant.

No. 57668.

Supreme Court of Iowa.

July 31, 1975.

Jere C. Maddux, Hegland, Newbrough, Johnston & Brewer, Ames, for appellant.

Richard C. Turner, Atty. Gen.; Thomas Mann, Jr., Asst. Atty. Gen., and Ruth Harkin, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND and McCORMICK, JJ.

McCORMICK, Justice.

Defendant appeals his conviction by jury and sentence for breaking and entering in violation of § 708.8, The Code. Although we find no merit in four of his five assignments of error, we reverse and remand because we agree with his contention the trial court erred in allowing police identification tags to be taken into the jury room.

The Northside Fruit and Grocery in Ames was equipped with a "silent" burglar alarm. When activated by a forced entry of the store, it would not ring there but would ring at the Ames police station. At 4:33 a. m. on Easter Sunday, April 14, 1974, the alarm sounded at the police station.

Officers Bargabos and Campbell were directed by radio to investigate. They traveled separately to the store. Bargabos arrived first and immediately checked to see whether the front door was broken. While doing so, he saw a person running from the store area toward a grove of trees to the north. He gave chase but could not find the person, nor did he see him clearly enough to identify him. He returned to the store. By then officer Campbell had arrived, and the two officers began a search of the grove, using flashlights. At about 4:45 a. m. they found the defendant and Robert Rank lying flat on the ground under an evergreen tree. The two men were arrested and taken to the police station by Bargabos.

Campbell examined the store building. He discovered a door on the roof of the store which had been broken in several

places and was ajar. Wood splinters were visible on the roof, and mud had been tracked about six feet into the attic of the store.

The temperature was near freezing, and the ground was wet. A later Bureau of Criminal Investigation comparison of the mud in the store with mud on defendant's shoes showed it to be of common origin. A car belonging to Rank was found parked about two blocks north and one block east of the store. About two hours after the arrest, the officers discovered a hammer under the tree where the men had been lying. The BCI report said the hammer was not the instrumentality used to pry open the door. Gloves and mittens taken from defendant and Rank were examined by the BCI for traces of wood and paint, but the results were negative.

■ I. Identification tags prepared by the Ames police were attached to eight State exhibits and two defense exhibits. The tags remained on the exhibits after they were received in evidence. At the close of the trial, defense counsel moved the court to require removal of the tags from the exhibits before they were given to the jury, alleging they would prejudice the defendant's case by unfairly emphasizing the State's testimony regarding the gathering of evidence against the defendant and Rank. The motion was overruled.

In State v. Branch, 222 N.W.2d 423 (Iowa 1974), we held it is reversible error to permit identification tags containing a condensation of the State's case to go to the jury. Sending the tags into the jury room has the effect of unduly emphasizing State evidence. Prejudicial error occurs even when the recitals on the tags are merely cumulative of State testimony.

The identification tag attached to State's exhibit 5, gloves and mittens taken from defendant and Rank, is typical of those which accompanied the exhibits to the jury:

| EVIDENCE | | | Case No. 741009 |
|---|---|---|---|
| Evidence Description (item) | | | |
| Place Evidence found Police Dept. | | | |
| Date & time of recovery April 14, 1974 | | | |
| Suspect Robert Rank—Tim Shultz | | | |
| DOB Offense B & E | | | |
| Victim Ames Fruit & Grocery North Side Store | | | |
| Evidence recovered by Doty | | | |

CHAIN OF POSSESSION OF EVIDENCE
(Signature required)

| Plains. ex. 5 | | | Q–3 |
|---|---|---|---|
| From | To | Date | Time |
| Doty | Flora | 4–14–74 | 06:15 |

The comprehensiveness of this information is not materially different from that found objectionable in the Branch case. See 222 N.W.2d at 425. Once an exhibit has been received in evidence, no proper purpose exists for leaving attached to it an identification tag which summarizes the State's testimony regarding the exhibit.

The trial judge in this case did not have the benefit of our Branch decision because the trial in this case occurred several months before Branch was decided. However, under the rule in Branch it was reversible error for the court to allow the identification tags to go to the jury over defendant's objection.

Defendant's other assignments of error have been examined to provide guidance to the trial court on retrial.

■ II. Defendant contends the trial court erred in receiving the hammer in evidence. He asserts the BCI report excluded the hammer as the source of pry marks on the door of the store and thereby eliminated any possible relevance it might otherwise have had. This argument overlooks two principles.

■ One is that the jury was not bound to accept the BCI report as conclusive. The trier of fact is not obliged to accept opinion evidence, even from experts, as conclusive. It may be accepted in whole, in part, or not at all. Meade v. Roller, 212 N.W.2d 426, 429 (Iowa 1973).

588

The other principle is that instruments in a defendant's possession or available to him, even though not identified as having been used in a crime, may be received when it is reasonable to admit them in order to complete the picture of circumstances surrounding the event. *State v. Kittelson*, 164 N.W.2d 157, 167–168 (Iowa 1969).

The trial court did not err in overruling defendant's objection to the admissibility of the hammer.

III. Defendant also contends the court erred in overruling his motion for directed verdict at the conclusion of the evidence. We do not agree.

Applying the principles discussed in *State v. Sellers*, 215 N.W.2d 231 (Iowa 1974), we find the evidence was sufficient for jury consideration. Although the evidence relied on by the State was circumstantial, we believe it was for the jury to say whether those circumstances were entirely consistent with defendant's guilt and inconsistent with any rational hypothesis of innocence.

There was ample evidence of breaking and entering. The fighting issue was whether defendant was responsible. The jury could find the person officer Bargabos saw running from the store was involved in the break-in. That person hid in the grove. About ten minutes later defendant and Rank were found hiding under a tree in the grove. A hammer was later found there. Mud on defendant's shoes was consistent with that in the store. Rank's car was parked three blocks away. Defendant's concealment under a tree near the store within minutes of the break-in at 4:45 a. m. on a cold, wet Easter Sunday morning, combined with the other circumstances shown, constitutes persuasive evidence of his guilt.

A jury could reasonably find defendant was involved in the break-in. Proof of his complicity was substantial; it amounted to more than suspicion, speculation, and conjecture. See *State v. Brown*, 172 N.W.2d 152, 155 (Iowa 1969).

The trial court did not err in overruling defendant's motion for directed verdict.

IV. In his remaining two assignments of error defendant complains of trial court instructions on circumstantial evidence and aiding and abetting. The instructions given conform substantially with uniform instructions on both subjects. They were justified under the evidence. The exceptions to them were hypertechnical and without merit. See *State v. Robinette*, 216 N.W.2d 317, 318 (Iowa 1974).

The trial court did not err in instructing the jury on circumstantial evidence and aiding and abetting.

Because of the error discussed in Division I, defendant is entitled to a new trial.

Reversed and remanded.